HARRISON v. PHILADELPHIA CONTRIBUTIONSHIP FOR THE INSU-
RANCE OF HOUSES FROM LOSS BY FIRE.†

(Circuit Court of Appeals, Third Circuit.   February 12, 1910.)

No. 67.

INSURANCE (§ 55*)—MUTUAL COMPANIES—MEMBERS—RIGHT TO QUESTION VA-
LIDITY OF PRE-EXISTING BY-LAWS.

The holder of a policy of insurance containing a provision giving the
company the right to cancel it on certain terms in accordance with the
deed of settlement constituting the fundamental law of the company when
it was issued cannot defeat such right on the ground that a prior amend-
ment of the deed of settlement by which such provision was incorporated
was ultra vires.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 69; Dec. Dig.
§ 55.*]

Appeal from the Circuit Court of the United States for the Eastern
District of Pennsylvania.

Suit in equity by S. Graeme Harrison against the Philadelphia Con-
tributionship for the Insurance of Houses from Loss by Fire.   Decree
for defendant, and complainant appeals.   Affirmed.

For opinion below, see 171 Fed. 178.

R. Mason Lisle, for appellant.
W. W. Montgomery and John G. Johnson, for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge.   This case is interesting historical-
ly, from the fact that it concerns the first organization in this country
to insure property; but the facts and legal questions involved in its
disposition are few and simple.   The bill is by a member and policy
holder to prevent the company from enforcing discontinuance of a
policy of insurance on his property, unless he pays hereafter an in-
creased premium.   On final hearing the court below, in an opinion
reported at 171 Fed. 178, dismissed the bill, whereupon complainant
appealed.

The company was formed in March, 1752, by a deed of settlement
which constituted the subscribers members thereof, stipulated for their
sharing the profits and loss "for and during the respective terms in
his or their respective policies," and providing insurance for their
property as follows:

"Every person insuring shall deposite in the Hands of the Treasurer, as a
Pledge for the Performance of his Covenants a certain Sum for every One
Hundred Pounds insured, according to the greater or less Hazard of the
Building on which the same is insured, agreeable to the Table hereto an-
nexed.   Which Deposite Money shall be returned to the person or Persons so
depositing it, his, her or their Executors, Administrators or Assigns, at the
Expiration of His, Her or Their Respective Policies, together with a propor-
tionable Dividend of the Profits in the meantime, after Deduction of Losses
and incident Charges only."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied.

In 1836 the deed of settlement was further changed by this provision:

"Every policy hereafter to be issued by this Society shall be made to continue in force for an unlimited period. * * * And it shall moreover be lawful for this Society, upon giving thirty days' notice, to cancel the policy, returning the deposit money upon a surrender of the policy. It shall also be lawful for the insured, on giving five days' notice and surrendering the policy to withdraw the deposit money, allowing a reduction of five per centum thereon."

The relation between the complainant and the company is contractual, and originated in 1856, when his ancestor deposited $225 with the company and received its policy, dated June 3d of that year, for $4,-500 on his property, and on February 27, 1871, another policy on other property for $7,500, he having deposited $490 therefor. Such policies provided that they were made "on the terms, conditions, and provisions in the said deed of settlement and in this policy contained or referred to." They contained the provision cited above, as amended in 1836. The insurance contracts continued undisturbed until September 20, 1907, when respondent notified complainant, who had succeeded to the rights and liabilities of his ancestor, of its intention to return his deposits and cancel the policies within 30 days, unless he would accept a partial reduction of the risk and an increase in the rate, with the return of a proportionate part of the deposit. No question of good faith is involved or that the action of the company is not justified by judicious insurance practice. The complainant refuses to modify his policies so as to permit them to remain in force, and by this bill seeks to enjoin their cancellation and the return of his ancestor's deposits.

His contention is that his deposits constitute $1/874$ part of the deposits in the company, that he is equitably interested in the assets in a similar proportion, and that a return thereof and cancellation of the policies would deprive him of the right to participate in assets and profits. To sustain this contention the plaintiff contends that the alterations of 1836 and other precedent actions of the company were ultra vires, illegal, and void. With that question this court has nothing to do; but, assuming for present purposes such provisions were open to such challenge by a proper party, those questions do not concern the complainant. His ancestor's connection with this company rests on the contract he made with it in 1856, and with the stipulations in that contract in his favor he must accept the stipulations his ancestor made in favor of the company. While that contract provided for the creation of rights to him, it likewise provided for the termination of those rights. His position is not unlike that of a tenant under lease, who, so long as that relation exists, is denied the privilege of contesting the title of him who created the tenure. Western Union Telegraph Co. v. Pennsylvania R. R. Co. (C. C.) 120 Fed. 362. In other words, standing on the insurance contract, to establish a right to relief, he must accept such relief only as is warranted by enforcing all the provisions of the contract. To sustain this bill, and prevent the company from in good faith forfeiting these policies in accordance with their stipulated provisions, would be to use the pow-

ers of a court of equity to aid in the violation, rather than the enforcement, of contracts.

The decree of the court below is affirmed.